**GUADALUPE VALENCIA**
California State Bar No. 197831
105 West "F" Street, 3rd Floor
San Diego, California 92101
Telephone: (619) 232-2588
gvalencialaw@yahoo.com

Attorney for Mr. Montes Cabrera

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE GONZALO P. CURIEL)**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 21CR00292-GPC |
| | ) | |
| Plaintiff, | ) | DEFENDANT'S SENTENCING |
| | ) | MEMORANDUM |
| v. | ) | |
| | ) | |
| | ) | Date: May 8, 2023 |
| JAVIER MONTES CABRERA, | ) | Time: 8:30 a.m. |
| | ) | |
| Defendant. | ) | |
| | ) | |

TO:    RANDY S. GROSSMAN, UNITED STATES ATTORNEY;
        ALLISON B. MURRAY, ASSISTANT UNITED STATES ATTORNEY

Defendant, Javier Montes Cabrera ("Mr. Montes Cabrera"), by and through his counsel, Guadalupe Valencia, hereby files the following Sentencing Memorandum.

**I.**

**INTRODUCTION**

Mr. Montes Cabrera is respectfully requesting a sentence of 60 months in custody to be followed by 5 years of supervised release. Mr. Montes Cabrera maintains that in examining his particular circumstances and the non-violent offense he committed, the recommended sentence of 60 months is sufficient, but not greater than necessary, to achieve all goals required pursuant to Title 18 U.S.C § 3553.

//

//

//

21CR00292-GPC

## II.

## THE INDIVIDUAL BEFORE THE COURT AND
## OTHER RELEVANT CRITERIA

Mr. Montes Cabrera is thirty-seven years old and has been in federal custody since he was arrested on December 6, 2020. Mr. Montes Cabrera was born in Manzanillo, Colima, Mexico, to the union of Javier Montes-Garcia (now deceased) and Maria Cabrera-Solis (age 75). Mr. Montes Cabrera was raised by his mother as his father left the family home when he was five years old. He recalls that his mother struggled greatly to support the family, and they often went without food. Mr. Montes Cabrera has two biological siblings and two maternal siblings, which makes it a total of five children that his mother had to take care of and provide for on her own. At the age of twelve, Mr. Montes Cabrera stopped attending school so he could begin working to help support the family.

Although Mr. Montes Cabrera made a life-changing decision at a very young age to no longer pursue his studies and to gain employment so he could help support his family, he was never close to his mother. He has, however, always had a good relationship with his siblings. Throughout his young years, Mr. Montes Cabrera found different types of jobs, one being a fisherman. He has always been a hardworking and responsible person.

In 2006, Mr. Montes Cabrera married his now wife, Marisol Alcaraz-Mora (age 37). They have two children together, Pedro (age 14) and Vanessa (age 11). Both children are under the care of the mother in Manzanillo. Ms. Alcaraz is currently employed as a caregiver and housekeeper for a family. Mr. Montes Cabrera resides with his wife and children in Manzanillo, and they have been there for over 18 years prior to his arrest.

Mr. Montes Cabrera is close with both of his children, and he feels horrible that he promised his children that he would never leave them. He understands the pain and trauma that comes along with a parent leaving the household, and he has never wished for them to feel that pain or trauma. There are no words to express how bad Mr. Montes Cabrera feels not being present in his children's lives, and it is something that weighs heavily on him every day since his date of arrest. He has now been in custody for over two years and four months, since then, he has done his best to stay busy and he has taken advantage of multiple courses that the correctional facility provides. *See* Exhibit A, Certificates of Participation and Completion.

21CR00292-GPC

Attached to this memorandum are letters from Mr. Montes Cabrera's immediate family members and close relatives.  They describe Mr. Montes Cabrera's character as a good person, hardworking, honest, good father, good husband, good brother, good friend and good son. *See* Exhibit B, Letters of Recommendation from Family Members.  Overall, the whole family misses him very much and is shocked of his whereabouts because it is very unlike him to get in any legal trouble.  Everyone has very positive memories, perceptions and opinions of Mr. Montes Cabrera, and all of them are waiting eagerly for his return back home to Mexico.

## III.

## SENTENCING FACTORS CONSIDERED

### A.  Current Law

The Sentencing Guidelines are advisory, not mandatory.  *United States v. Booker*, 543 U.S. 220, 224-25, 259-60 (2005); *United States v. Hantzis*, 625 F.3d 575, 582 (9th Cir. 2010). Accordingly, this Court is authorized to impose a sentence below the Guidelines range.  *Booker*, 543 U.S. at 245.   The Supreme Court and Ninth Circuit have established a framework for approaching the sentencing process post-*Booker*.  See *Rita v. United States*,  552 U.S. 338 (2007); *Gall v. United States*, 551 U.S. 1113 (2007); *Kimbrough v. United States*, 552 U.S. 85 (2007); *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008).  Under this framework, the sentencing court must consider all of the factors listed in 18 U.S.C § 3553(a) when imposing sentence. *Id.*

The overarching statutory charge under 18 U.S.C. § 3553(a) is to "impose a sentence sufficient, but not greater than necessary" to comply with the purposes of sentencing. *See* 18 U.S.C § 3553(a).  Those purposes are the need:

- to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment;
- to afford adequate deterrence;
- to protect the public from future crimes of the defendant; and
- to provide the defendant with necessary educational or vocational training, medical care, or other correctional treatment.

All sentencing proceedings are to begin by determining the applicable Guidelines range. *Carty*, 520 F.3d at 991.  The Guidelines are the starting point and the initial benchmark, and are to be kept in mind throughout the process.  *Id*. Furthermore, the parties must be given a chance to argue for a sentence they believe is appropriate. *Id*.

21CR00292-GPC

The sentencing court must then consider the factors outlined in 18 U.S.C. § 3553(a) to determine if they support the sentence suggested by the parties, specifically:

- the nature and circumstances of the offense, § 3553(a)(1);
- the history and characteristics of the defendant, § 35553(a)(1);
- the kinds of sentences available, § 3553(a)(3);
- the sentencing guidelines range, § 3553(a)(4);
- pertinent Sentencing Commission policy statements, § 3553(a)(5);
- the need to avoid unwarranted sentencing disparities, § 3553(a)(6); and
- the need to provide restitution to any victims of the offense, § 3553(a)(7).

When considering these factors and determining the appropriate sentence, the sentencing court may not presume that the Guidelines range is reasonable, nor should the Guidelines factor be given more or less weight than any other. *Nelson v. United States*, 129 S.Ct. 890, 892 (2009); *Carty*, 520 F.3d at 991.

This court is "empowered to disagree with the Guidelines, when the circumstances in an individual case warrant." *United States v. Mitchell*, 624 F.3d 1023, 1028 (9th Cir. 2010). Although "[n]o judge is *required* to sentence at a variance with a Guideline"… "every judge is at liberty to do so." *Id*. at 1030 (citing *United States v. Corner*, 598 F.3d 411, 416 (7th Cir. 2010)). Under these principles, the court is at liberty to tailor a sentence to the individual defendant. *United States v. Chavez*, 611 F.3d 1006 (9th Cir. 2010) (citing *Kimbrough*, 552 U.S. at 101). Given the application and balancing of the factors in 18 U.S.C § 3553(a), the sentencing process necessarily involves an exercise in judgment, not a mathematical proof. *United States v. Grossman*, 513 F.3d 592 (6th Cir. 2008). Indeed, rigid mathematical formulas for reviewing outside-guidelines sentences are barred. *Gall*, 552 U.S. at 47.

Furthermore, one of the goals of sentencing remains rehabilitation. *United States v. Moreland*, 568 F. Supp. 2d 674, 687 (S.D. W. Va. 2008). This goal cannot be served if a defendant has nothing to look forward to beyond imprisonment. *Id*. Accordingly, a judge should hesitate to impose a sentence so severe that he "destroys all hope and takes away the possibility of useful life." *Id*. (citing *United States v. Carvajal*, 2005 WL 476125 at *6, 2005 (S.D. N.Y. 2005)). Instead, the district court "shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes [of sentencing]." 18 U.S.C. § 3553(a).

**B.  Applicable Sentencing Guidelines**

Mr. Montes Cabrera maintains the following Sentencing Guidelines are applicable and appropriately applied in this case:

21CR00292-GPC

1. Base Offense Level [USSG §2D1.1(c)(1)]          38
2. Safety Valve [§2D1.1(b)(18)]                    - 2
3. Acceptance of Responsibility [§3E1.1]           - 3
4. Combination of Circumstances [5K2.0]            - 2

        Total Adjusted Offense Level:          31

Mr. Montes Cabrera has zero criminal history points.  He is in a Criminal History Category I.  The Sentencing Guideline range for an adjusted offense level of 31, and a Criminal History Category I, is 108-135 months custody.    Mr. Montes Cabrera believes a variance from the Sentencing Guidelines is appropriate and is requesting a 60 month custodial sentence with 5 years of supervision to follow consistent with Probation's recommendation.

## 1.  The Court Should Award a Reduction for Safety Valve

There is a dispute between the parties as to whether safety valve should be awarded in this case.  Mr. Cabrera admitted that he was involved in illegal activity knowingly and voluntarily as evidenced by his guilty plea. Furthermore Mr. Cabrera admitted that he was offered a large fee to participate in what he admittedly knew was illegal. He explained that he knew that the venture involved drugs which was further clear to him for multiple reasons. The vessel that they (the other members) boarded was not a fishing boat and had no fishing equipment. Mr. Cabrera provided the information that he knew about this illegal activity that he knowingly participated in two years ago. He stated how he was hired, the fee he was paid, and he is fully accepting responsibility, disclosing the facts that are relevant to this case.

Absent credible evidence which demonstrates Mr. Montes Cabrera was untruthful in his claim, this Court should award Mr. Montes Cabrera a reduction for safety valve.

## C.  Applicable Factors Pursuant to 18 U.S.C. § 3553(a)
### 1.  Nature and Circumstances of the Offense

The plea agreement, the PSR, and the above information concerning the offense all provide sufficient information for the Court to consider when evaluating the nature and circumstances of the offense.  However, Mr. Montes Cabrera would like to highlight several factors for the Court to consider.

### a.  The Offense was Non-violent

"If the defendant is a non-violent first offender [], the Court should consider imposing a sentence other than a sentence of imprisonment." *See* United States Sentencing Guidelines §

21CR00292-GPC

5C1.1, Commentary: Application Notes: 4. (2021). "A 'non-violent first offender' is a defendant who has no prior convictions or other comparable judicial dispositions of any kind and who did not use violence or credible threats of violence or possess a firearm or other dangerous weapon in connection with the offense of conviction." *Id.* Although the offense is serious, Mr. Montes Cabrera is a "non-violent" offender. The offense did not involve violence, weapons, threats, injuries, loss of property, or any identifiable victims. Thus, as a non-violent offender, the requested sentence is sufficient, but not greater than necessary.

### b.  Genuine Remorse for Engaging in the Offense

Mr. Montes Cabrera is very remorseful and regrets his involvement in the offense. *See* PSR at 5. He knows what he did was wrong. He has expressed remorse to both Probation and his family. He only wishes to be back in Mexico with his family, where they need him the most.

### 2.  History and Characteristics of the Defendant

The PSR accurately reflects Mr. Montes Cabrera's history and characteristics. Under 18 U.S.C. § 3553(a), this Court should consider Mr. Montes Cabrera's personal history when determining the appropriate sentence for his offense. *Booker* gives district courts the discretion to weigh a multitude of mitigating factors such as age, education, and family ties and responsibilities. *United States v. Burgum,* 633 F.3d 810 (9th Cir. 2011). As noted by Probation, Mr. Montes Cabrera has no criminal convictions, has been steadily employed and does not have a history of substance abuse. Mr. Montes Cabrera believes that his background supports a variance.

### 3.  Need to Provide Just Punishment and Respect for the Law

### a. Incarceration has a Greater Significance for First-time Offenders

Mr. Montes Cabrera has never spent time incarcerated prior to the instant offense. Probation noted in the PSR this is Mr. Montes Cabrera's first criminal conviction. *See* PSR at 7. Probation agreed that Mr. Montes Cabrera has not served custodial terms in the past and "believes a custodial sanction below the advisory guideline range of imprisonment would be sufficient but not greater than necessary, to meet the objectives of sentencing." *See* PSR at 10. Given Mr. Montes Cabrera's inexperience with the criminal justice system, he is likely to be more susceptible to abuse while in custody than other repeat offenders who are familiar with the circumstances of imprisonment. *See United States v. Qualls,* 373 F. Supp. 2d 873, 877 (E.D. Wis. 2005) (generally a lesser period of imprisonment is required to deter a defendant not

previously subject to lengthy incarceration than is necessary to deter a defendant who has already served serious time yet continues to reoffend); *see also United States v. Baker*, 445 F.3d 987, 990 (7th Cir. 2006) (first experience with prison would mean more to defendant and have greater impact than to a defendant who had prior convictions). Accordingly, for a first time offender who engaged in a non-violent offense, severe imprisonment should be avoided and is otherwise not necessary to achieve respect for the law, or to ensure the desired deterrent effect required.

### b.  The Significant Collateral Consequence of Conviction

The collateral consequences of a felony conviction cannot be understated. Mr. Montes Cabrera is not a United States citizen. As a result of Mr. Montes Cabrera's conviction, he will be deported back to Mexico upon the completion of any sentence imposed by the Court. Regardless of the sentence imposed, his conviction renders him ineligible for relief from removal or deportation. Thus, Mr. Montes Cabrera will be exiled from the United States at the conclusion of this case. The loss of his right to work in, or even visit, the United States is a life-long collateral consequence of his conviction. The deportation he faces is a "life sentence of banishment [from the United States] in addition to the punishment which a citizen would suffer from identical acts." *Jordan v. De George,* 341 U.S. 223, 232 (1951) (Jackson, J.). If Mr. Montes Cabrera were a citizen, any sentence that this Court imposes will have a definite beginning and end. However, long after his sentence is completed, Mr. Montes Cabrera will suffer the consequences of his mistake. The collateral consequence of life-time banishment from the United States is a "drastic" penalty that will irreversibly impact Mr. Montes Cabrera's life. *Id.* This is only compounded by the danger he faces upon deportation from the individuals who coerced him to be part of this act. Mr. Montes Cabrera respectfully requests that this Court take into account the above collateral consequence of his conviction when considering an appropriate sentence.

### c.  Sixty Months (60) is Reasonable to Avoid Sentencing Disparities

When considering Mr. Montes Cabrera's request for a 60-month custodial sentence, this Court should also consider a district court's sentence must be determined in light of the factors set forth in 18 U.S.C § 3553(a) which specifically include the "need to avoid unwarranted sentencing disparities." *See* 18 U.S.C. 3553(a)(6) (2019); *see also*  28 U.S.C. § 991(b)(1)(B); U.S.S.G. Ch. 1, PtA, ("Congress sought reasonable uniformity in sentencing by narrowing the wide disparity in sentences imposed for similar criminal offenses committed by similar offenders."). In *United States v. Daas,* 198 F.3d 1167 (9th Cir. 1999), the Ninth Circuit noted that

21CR00292-GPC

a central goal of the Sentencing Guidelines is to eliminate sentencing disparity. *Daas citing Koon v. United States,* 518 U.S. 81 (1996). The Ninth Circuit has repeatedly held that it is appropriate for district courts to take into account sentencing disparities when imposing sentence. *See United States v. Tzoc-Sierra,* 387 F.3d 978 (9th Cir. 2004) (in drug case the Ninth Circuit affirmed district court's downward departure from 46-57 months to 36 months on basis of disparity of sentence received by co-defendants).

In the instant case there were three panga (Go Fast Vessel "GFV") involved in the offense. Two boats departed from Colombia with cocaine, and the third boat which Mr. Montes Cabrera was on departed from Mexico. The Mexican boat was to rendezvous with the other two boats for the cocaine to be loaded and then brought back to Mexico. All of the defendants plead guilty to the same offense. "Per the AUSA, [] it is the government's understanding that all the defendants took turns driving the GFV[,]" and thus, no difference in the role among the ten defendants involved in the case. *See* PSR at 2. Five of the ten defendants have been sentenced by the Court. The sentences imposed to date have ranged from 54 months custody to 56 months custody. *See* Docket generally. Therefore, to avoid unwarranted sentencing disparities, Mr. Montes Cabrera's requested sentence of 60 months custody is reasonable and appropriate.

//

//

### 4. The Proposed Sentence will Promote Deterrence

#### a. Specific Deterrence has Been Achieved

Here, there can be no question the requested sentence is sufficient to specifically deter Mr. Montes Cabrera from engaging in any future criminal conduct. Mr. Montes Cabrera has realized the consequences of his actions, and has vowed to never choose the same path again. The time already incarcerated, and the threat of further incarceration have both been significant deterrents experienced by Mr. Montes Cabrera. Thus, further severe incarceration is not necessary to promote specific deterrence.

#### b. A Severe Sentence to Promote General Deterrence Must be Weighed Against Individualizing the Sentence

Few legal principles are either as ancient or deeply etched in the public mind as the notion that punishment should fit the crime. *See United States v. Barker,* 771 F.2d 1362, 1365 (9th Cir. 1985). The familiar maxim, however, is only half-true. "[I]n the present century the pendulum

21CR00292-GPC

has been swinging away from … the philosophy that the punishment should fit the crime and toward on that the punishment should [also] fit the criminal." W. La Fave & A. Scott, Handbook on Criminal Law § 5 at 24 (1972).  The concept of the notion of individualized sentencing is firmly entrenched in our present jurisprudence.  As the Supreme Court observed, "[p]unishment should fit the offender and not merely the crime." *Williams v. New York,* 337 U.S. 241, 247 (1949).  While general deterrence is a legitimate consideration in passing sentence and must be considered by the Court under 3553(a), it is subject to limitation.  "Tailoring punishment to the individual criminal may reduce the efficacy of [general] deterrence, but that reduction is an inevitable cost of a system that eschews mechanistic punishment." *Barker,* 771 F.2d at 1368.  "[G]eneral deterrence for the benefit of society is served when a person is convicted of a serious crime, thus deterring others from making the same mistake." *United States v. Onuoha,* 820 F.3d 1049, 1057 (9th Cir. 2016).

In the instant case when weighing the need to impose a severe custodial sentence to promote general deterrence against the need to individualize the sentence to Mr. Montes Cabrera, respectfully, Mr. Montes Cabrera maintains general deterrence is satisfied with the requested sentence, and the recommended sentence is the appropriate individualized sentence.  A judge should hesitate to impose a sentence so severe that he "destroys all hope and takes away the possibility of useful life." *United States v. Carvajal,* 2005 WL 476125 at *6, 2005 (S.D. N.Y. 2005)).  Here, Mr. Montes Cabrera understands he must be punished, but also believes the requested sentence is sufficient, but not greater than necessary to do so in his case.

### 5.   The Public will be Protected from Future Crimes by Mr. Montes Cabrera

Mr. Montes Cabrera will be deported upon the conclusion of his custodial sentence.  Mr. Montes Cabrera maintains that more appropriate than imposing a severe custodial sentence, consistent with 28 U.S.C. § 994(k), the Court, to the extent possible, should afford Mr. Montes Cabrera the opportunity to rehabilitate himself, and maintain gainful employment and attend vocational training.  *See* 28 U.S.C. § 994(k) (2009) ("The [Sentencing] Commission shall insure that the guidelines reflect the inappropriateness of imposing a sentence to a term of imprisonment for the purpose of rehabilitating the defendant with needed educational or vocational training, medical care, or other correctional treatment").

21CR00292-GPC

Furthermore, as a first-time offender, Mr. Montes Cabrera presents a low risk of recidivism. *See United States v. Duane,* 533 F.3d 441, 453 (6th Cir. 2008). Recidivism rates of first-offenders are significantly lower than those for other defendants in higher criminal history categories. *See* Michael Edmund O'Neill, *Abraham's Legacy: An Empirical Assessment of (Nearly) First-Time Offenders in the Federal System ,* 42 B.C.L. Rev. 291 (2001) (suggesting a different Criminal History Category be created for "true first-time offenders"). In a case such as Mr. Montes Cabrera's where he has no experience with incarceration prior to the instant offense, severe incarceration is not appropriate. Mr. Montes Cabrera's background simply presents a reduced likelihood of recidivism. *See A Comparison of the Federal Sentencing Guidelines Criminal History Category and the U.S. Parole Commission Salient Factor Score,* 15 (Jan. 4, 2005). Education and employment are more effective ways to protect the public and prevent recidivism. Therefore, Mr. Montes Cabrera urges the Court to impose a 60-month custodial sentence.

//
//
//
//
//
//

## IV.
## SENTENCING RECOMMENDATION

Based on the foregoing facts and law Mr. Montes Cabrera respectfully requests this Court impose a 60-month custodial sentence to be followed by 5 years of supervision.

Dated: May 3, 2023                                    Respectfully Submitted,

                                                     *s/Guadalupe Valencia*

                                                     Guadalupe Valencia
                                                     Attorney for Defendant Mr. Montes Cabrera

10

21CR00292-GPC

# EXHIBIT A


## CoreCivic

# ❧ Certificate of Participation ❧

*This is to certify that*

# Montes-Cabrera, Javier

*has satisfactorily completed the requirements prescribed for*

## Managing my Emotions

Given on this, the ___1st___ day of ___August___, Two Thousand and ___Twenty-Two___

_____          _____
Warden                                        Authorizing Person



# 🜲 Certificate of Participation 🜲

*This is to certify that*

# Montes-Cabrera, Javier

*has satisfactorily completed the requirements prescribed for*

## Mapping your steps –
## 12 STEP guide map

*Given on this, the* 24th *day of* May *, Two Thousand and* Twenty-Two

_____
Warden

_____
*Authorizing Person*



# certificate

OF COMPLETION

This certificate is proudly presented to

## JAVIER MONTES-CABRERA

for completing

Business Ethics: Ethical Decisions

Clock Hours: 1.67

November 26, 2022

CYPHERWORX COLLABORNATION



Certificate

OF COMPLETION

This certificate is proudly presented to

JAVIER MONTES-CABRERA

for completing

Honest Jobs

Clock Hours: 0.25

November 16, 2022



Certificate
OF COMPLETION

This certificate is proudly presented to

JAVIER MONTES-CABRERA

for completing
Email Basics

Clock Hours: 1.00

November 1, 2022

# Certificate
## OF COMPLETION

*This certificate is proudly presented to*

# JAVIER MONTES-CABRERA

*for completing*

## Learning Tips: How to Enjoy Learning

Clock Hours: 0.50

October 30, 2022





Certificate

OF COMPLETION

This certificate is proudly presented to

JAVIER MONTES-CABRERA

for completing

Learning Tips: How to Enjoy Learning

Clock Hours: 0.50

October 30, 2022



Certificate
OF COMPLETION

This certificate is proudly presented to

JAVIER MONTES-CABRERA

for completing

Advanced Interpersonal Communication: Building Relationships Through Feedback

Clock Hours: 0.75

October 18, 2022



certificate
O F   C O M P L E T I O N

This certificate is proudly presented to

JAVIER MONTES-CABRERA

for completing

Advanced Interpersonal Communication: Building Relationships
Through Feedback

Clock Hours: 0.75

October 18, 2022



# Canteen Correctional Services

# Certificate of Accomplishment

*Presented to*

## Javier Montes

*For successfully completing*

## In-Service Kitchen Skills Training Program

*Presented on    April 27, 2022*



A.Villanal

Instructor

E.CUSTODIO

District Manager

# EXHIBIT B

Dear Honorable Judge Gonzalo P. Curiel

My name is Marisol Alcaraz Mora, I am the wife of Mr. Javier Montes Cabrera; I am writing to tell you that my husband is a good person, an honest worker, a good father and husband. He has always been a good friend, always helping others, he has never had a problem with anyone, I have known him since we were children and now we have been together for almost 18 years; We have two children who miss their father very much because we have never been away from him since we are a very close family and going through this is very difficult since we never imagined going through a situation like this, my husband has always been a hard-working man, to this day he continues to work where he is, for he works in the kitchen and cleaning cells, and all to continue being responsible for us and I think he does not deserve to be going through this since my children and I need him a lot more to feel protected again, my children are in their teens and that is when they need it the most. The most difficult moment throughout this whole situation is telling my children what is happening with their dad, and not being able to explain this whole process to them and when it will all end. Without further ado, I say goodbye to you, and I thank you for reading my letter.

Dear Judge, I send you a cordial greeting.

SINCERELY

Marisol Alcaraz Mora

Manzanillo, Col., México 11 de enero de 2023

Estimado Honorable Juez Gonzalo P. Curiel

Mi nombre es Marisol Alcaraz Mora, soy la esposa del señor Javier Montes Cabrera; me dirijo a usted para decirle que mi esposo es una buena persona, honrada trabajador, buen padre y esposo. Él siempre ha sido un buen amigo, siempre ayudando a los demás, jamás ha tenido ningún problema con nadie, yo tengo conociéndolo desde que éramos unos niños y ya ahora tenemos casi 18 años juntos; tenemos dos hijos los cuales extrañan mucho a su papá porque nunca hemos estado lejos de él ya que somos una familia muy unida y el estar pasando por esto es muy difícil ya que jamás nos imaginamos pasar por una situación así, mi esposo siempre ha sido un hombre trabajador, hasta el día de hoy él sigue trabajando aún en el lugar en donde está, pues él trabaja en la cocina y limpiando celdas, y todo por seguir siendo responsable con nosotros y creo que no se merece estar pasando por esto ya que mis hijos y yo lo necesitamos mucho para sentirnos de nuevo protegidos, mis hijos están en plena adolescencia y es cuando más lo necesitan. El momento más difícil en toda esta situación es el decirles a mis hijos lo que está pasando con su papá, y no poder explicarles todo este proceso y cuando será que terminará todo esto. Sin más que decirle me despido de usted y le agradezco el que pueda leer mi carta.

Estimado Juez le mando un saludo cordial.

**ATENTAMENTE**

Marisol Alcaraz Mora

Dear Honorable Judge Gonzalo P. Curiel

My name is Nelly Alvarez Cabrera. By means of this letter, it is pleasant and at the same time difficult for me to write these lines because it is about my brother Javier Montes Cabrera, a kind person, extremely empathetic, hardworking, a loving family man, and someone who always looks for the positive side. life and the circumstances that come your way. At home he is missed because he would always make us laugh, he likes to help to the best of his ability, and on several occasions, he has even saved the lives of people who were about to drown in the sea. Talking about Javier adds minutes to my life because he has shared his food with us, he's always cared about my wellbeing, always putting his hands to work to help me. I pray for him to return soon because my family misses him so much because as I said he was the soul of this house.

Javier is the third of five children born to my mother, Mrs. Elena, who, upon learning of this unfortunate event, had a lapse in her health, because she never believed this situation was possible. For me the news was unbelievable... I thought "no, this is not happening", I thought about my nephews, about his wife, about how they would get ahead without such an important pillar, because this man is that for them. Our mother struggles day by day, she firmly wants to hug her son; As I mentioned before, his well-being has been affected and with it, diabetes has undermined his health. Important dates have passed and as a family we feel devastated for not being able to enjoy them with him. I feel powerless, frustrated at not being able to do something so that his absence is not felt so much.

SINCERELY

Nelly Alvarez Cabrera

Manzanillo, Col., México 11 de enero de 2023

Estimado Honorable Juez Gonzalo P. Curiel

Mi nombre es Nelly Álvarez Cabrera. Por medio del presente me es grato y a la vez difícil escribir estas líneas debido a que se trata de mi hermano Javier Montes Cabrera, una persona amable, sumamente empática, trabajadora, un padre de familia amoroso, y alguien que siempre le busca el lado positivo a la vida y a las circunstancias que se le presenten. En casa se le extraña porque siempre nos hace reír, le gusta ayudar en la medida de sus posibilidades, en repetidas ocasiones incluso ha salvado la vida de personas que estuvieron a punto de ahogarse en el mar. Hablar de Javier es sumarle minutos a mi vida pues él nos compartía sus alimentos, siempre se preocupaba por mi bien, siempre poniendo manos a la obra para ayudarme. Hago oraciones para su pronto regreso ya que mi familia le extraña demasiado pues como dije era él alma de esta casa.

Javier es el tercero de cinco hijos de mi madre la Sra. Elena la cual al enterarse de este hecho lamentable tuvo una recaída en su salud, pues nunca creyó posible esta situación. Para mí la noticia fue de no creer… pensé "no, esto no está pasando", pensé en mis sobrinos, en su esposa, en como saldrían adelante sin tan importante pilar pues este hombre es eso para ellos. Nuestra mamá lucha día a día, desea firmemente abrazar a su hijo; como mencioné anteriormente su bienestar se ha visto afectado y con ello la diabetes a minado su salud. Han pasado fechas importantes y como familia nos sentimos devastados por no poder disfrutarlas con él. Me siento impotente, frustrada por no poder hacer algo para que no se sienta tanto su ausencia.

**ATENTAMENTE**

Nelly Álvarez Cabrera

Dear Honorable Judge Gonzalo P. Curiel

Hello, my name is Mariano Obed, I am 12 years old. Next, I will talk about my uncle Javier. To me he is like a child inside an adult man. He has a daughter my age, she's beautiful, we're both in the same school grade, I always listened when my mom Nelly told me how my uncle played with my cousins, and I really wanted to spend time with him and it's just that we didn't we live close. He promised to teach me how to fish when I came back from where we lived because I don't have a dad … I only saw him once, but I remember him making jokes and laughing a lot.

When my mom told me that it would be a while until I would see him again, I felt very bad, I was angry because I couldn't spend time with him as I had planned. I cried and I still cry because I see too much sadness in my cousins, especially in their eldest son, he is going to turn 16 soon and I know he won't be happy until he meets his dad again, my uncle Javier is actually my favorite.

SINCERELY

Mariano Obed Gonzalez Alvarez

Manzanillo, Col., México 11 de enero de 2023

Estimado Honorable Juez Gonzalo P. Curiel

Hola mi nombre es Mariano Obed tengo 12 años, a continuación, hablaré de mi tío Javier. Él para mí es como un niño dentro de un hombre grande. Él tiene una niña de mi edad, ella es hermosa, los dos vamos en el mismo grado de secundaria, yo siempre escuchaba cuando mi mamá Nelly me platicaba como mi tío jugaba con mis primos y deseaba mucho pasar tiempo con él y es que nosotros no vivíamos cerca. Él prometió enseñarme a pescar porque yo no tengo papá, cuando regresé de donde vivíamos… una sola vez lo vi pero lo recuerdo haciendo bromas y riendo mucho.

Cuando mi mamá me dijo que pasaría un tiempo hasta que volviera a verlo me sentí muy mal, estaba enojado pues no pude pasar tiempo con el cómo había planeado. Lloré y aún lloro porque veo demasiada tristeza en mis primos en especial en su hijo mayor, él va a cumplir 16 años pronto y sé que será feliz hasta que vuelva a reunirse con su papá, mi tío Javier de hecho él es mi favorito.

**ATENTAMENTE**

Mariano Obed González Álvarez

Dear Honorable Judge Gonzalo P. Curiel

My name is Delia, and I am the second of five siblings. I helped my mom in raising my brothers, among them Javier. He is very protective, cheerful, hard-working and I want to tell you that like my brothers and acquaintances, I miss him, I miss spending time with him a lot and I cannot get over his absence. It makes me angry to know that this is happening, our mother has broken down emotionally, he is her sun and the light of her life, all this consumes us and depresses us, but at the same time it unites us to wait for him and I know that when that day arrives we will be able to breathe without pain, eat with flavor and sleep with the certainty that he will be there for us as before.

Thank you for your attention, best regards.

Manzanillo, Col., México 11 de enero de 2023

Estimado Honorable Juez Gonzalo P. Curiel

Mi nombre es Delia y soy la segunda de cinco hermanos. Yo ayude a mamá en la crianza de mis hermanos entre ellos Javier. Él es muy protector, alegre, trabajador y les quiero decir que al igual que mis hermanos y conocidos, lo extraño, extraño mucho pasa el tiempo con él y no superó su ausencia. Me enoja saber que está pasando esto, nuestra mamá se vino abajo anímicamente, él es su sol y la luz de su vida, todo esto nos consume y nos deprime, pero al mismo tiempo nos une para esperarlo y sé que cuando ese día llegué podremos respirar sin dolor, comer con sabor y dormir con la certeza que el estará ahí para nosotros como antes.

Gracias por su atención, saludos cordiales.

**ATENTAMENTE**

Delia Álvarez Cabrera

January 12, 2023


Honorable Judge Gonzalo P. Curiel,


My name is Andrea, and I am the daughter of Javier's sister Delia. I am 19 years old and for as long as I can remember my uncle has always been very kindhearted, friendly, respectful, funny, and above all else the life of any event he is at. Having said the above it is important to mention that his presence has been very much missed at every family gathering, I have noticed an overwhelming sense of sadness and void at each event, nothing has been the same without him. Mainly coming from my cousin Pedro, my uncle's eldest son, I've noticed how much he is missing his dad. My uncle is everything to his wife and kids, my uncle is the hope and strength of this family.

When my mom told me what was happening, I felt a knot in my chest, I couldn't believe what she was telling me because he had always been a hardworking and highly responsible person when it came to his family; I immediately though of my grandmother (Javier's mother), I would even dare to say that my uncle Javier is her favorite and the light of her eyes, and of course you can tell how hard this has all been for her. My grandmother hasn't been in good health; when I visit she looks sad and her soul looks grey, it pains me to see her in this state.

The only thing I wish with all my heart is to see my family together, for my uncle to be with us again and for the spark of our family to return again with him.


Thank you for your time and attention, sending you a strong greeting.



Best Regards,

Andrea Carolina Guzman Álvarez

Manzanillo, Col., México 12 de enero de 2023

Distinguido Honorable Juez Gonzalo P. Curiel

Mi nombre es Andrea y soy hija de Delia hermana de Javier. Tengo la edad de 19 años y desde que tengo memoria recuerdo a mi tío como una persona muy bondadosa, amable, respetuosa, bromista y sobre todo el alma de cualquier evento en el cual esté presente. Dicho lo anterior es de real importancia mencionar que su presencia en cada una de las reuniones familiares es de mucha falta, pues puedo percatarme de una fuerte tristeza y un vacío en cada una de ellas, ya nada ha sido lo mismo sin él. Principalmente proveniente de mi primo Pedro, su hijo mayor, noto la falta que le hace a él. Mi tío lo es todo para sus hijos y su esposa, mi tío es la fuerza y esperanza de esa familia.

Cuando mi mamá me contó lo que estaba sucediendo sentí un nudo en el pecho, no podía creer lo que me contaba, ya que él siempre a sido una persona de bien, trabajador y altamente responsable con su familia; inmediatamente pensé en mi abuelita (mamá de Javier), pues me atrevería a decir que mi tío Javier es su favorito y la luz de sus ojos, y claro que se notó cuan complicado a sido para ella, mi abuelita no ha estado bien de salud, cuando la visito se ve triste y su alma se ve gris y me duele mucho verla en ese estado.

Lo único que deseo con el alma es volver a ver a mi familia unida, que mi tío Javier esté de vuelta con nosotros y vuelva esa chispa que desde que él no está se a apagado.

Gracias por la atención brindada, reciba un fuerte saludo.

**ATENTAMENTE**

Andrea Carolina Guzmán Álvarez

January 11, 2023

Honorable Judge Gonzalo P. Curiel:

I, Belén Alcaraz Mora, am the sister-in-law of Mr. Javier Montes Cabrera, I have known him for more than 17 years, I know he is a good person; hardworking, honest: he is a good father, husband, brother, son, and friend. The people who know him have good references for him.  I know very well that he is a good person, he is not a problematic person, he is very helpful and always helps others. Without much else to say, I bid you farewell Honorable Judge.

Kind regards.

Sincerely

Belen Alcaraz Mora

Manzanillo, Col., México 11 de enero de 2023

Estimado Honorable Juez Gonzalo P. Curiel:

Yo Belén Alcaraz Mora soy cuñada del señor Javier Montes Cabrera, tengo más de 17 años conociéndolo, sé que es una buena persona, trabajadora, honesta es un buen padre, esposo, hermano, hijo y amigo. Las personas que lo conocemos tenemos muy buena referencia de él, de sobra sé que es una buena persona, no es una persona problemática es muy servicial y siempre ayuda al prójimo. Sin más por decir, me despido de usted señor Juez.

Saludos cordiales.

**ATENTAMENTE**

Belén Alcaraz Mora